UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22490-CV-JORDAN
MAGISTRATE JUDGE P.A. WHITE

DONALD A. WILLIAMS,                  :

  Petitioner,                  :

v.                                   :        REPORT OF
                                              MAGISTRATE JUDGE
WALTER A. McNEIL,                    :

  Respondent.                  :
_____

## I. Introduction

Donald A. Williams, who is presently confined at Florida State Prison in Raiford, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction and sentence in case number F02-37491B, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus with memorandum of law, the Respondent's response to an order to show cause and appendix of exhibits and the petitioner's reply.

Williams raises the following claims:

1. The petitioner was denied effective assistance of appellate counsel when his attorney failed to make

1

claims on direct appeal which had been preserved and were subsequently barred from his 3.850 motion since the state noted the error should have been claimed on direct appeal. (DE#1:8).

2.    The petitioner was denied effective assistance of appellate counsel when his attorney failed to raise and argue on direct appeal ineffective assistance of trial counsel which was evident from the record. (DE#1:9).

3.    The petitioner was denied effective assistance of appellate counsel when his attorney failed to argue on direct appeal ineffective assistance of trial counsel when his attorney failed to obtain a DNA expert. (DE#1:10).

4.    The petitioner was denied effective assistance of appellate counsel when his attorney failed to object to a <u>Giglio</u>[1] violation, perjured testimony, the admission of the second cell phone into evidence, failed to claim error on the burglary jury instruction and permitted the admission of DNA evidence without expert testimony. (DE#1:11).

5.    The petitioner was denied effective assistance of trial counsel when his attorney failed to provide the petitioner his own DNA expert. (DE#1:13).

6.    The petitioner was denied effective assistance of

---

[1]. <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

2

trial counsel when his attorney failed to request a Frye[2] hearing as to the introduction of statistical DNA evidence. (DE#1:19).

7.   The petitioner was denied effective assistance of trial counsel when his attorney failed to present exculpatory evidence at his trial. (DE#1:21).

8.   The petitioner was denied effective assistance of trial counsel when his attorney failed to attempt to challenge or refute the method used by DNA expert Mary Mason to obtain statistical frequency. (DE#1:22).

9.   The petitioner was denied effective assistance of trial counsel when his attorney failed to provide him with his own DNA expert. (DE#1:24).

10.  The petitioner was denied effective assistance of trial counsel when his attorney failed to conduct an independent test of the evidence rather than relying on the state's experts. (DE#1:26).

11.  The trial court committed fundamental error when it allowed photographs of the recovered stolen items to be admitted into evidence in violation of Fla. Stat. 90.91. (DE#1:28).

12.  The trial court committed fundamental error when it allowed the Petitioner to be convicted of kidnaping

---

[2]Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923).

although the elements of the offense had not been met. (DE#1:31).

13.  The state committed prosecutorial misconduct during closing argument when it accused a witness of lying. (DE#1:31).

14.  The trial court erred when it permitted the jury to convict the petitioner of possession of a firearm by a convicted felon without calling any additional witnesses after the original trial concluded and the petitioner did not agree to stipulate to any previous testimony. (DE#1:32).

15.  The trial court erred in adding the word "terrorizing" to the kidnaping jury instruction. (DE#1:33).

16.  The trial court committed fundamental error when it added both "assault" and "battery" to the burglary offense. (DE#1:35).

17.  There is newly discovered evidence that the chain of custody of the evidence was broken. (DE#1:37).

18.  There is newly discovered evidence that since the chain of custody had been broken regarding the ski masks, the possibility exists that the masks may have been tampered with and the petitioner's DNA placed on the masks. (DE#1:49).

19.  Fundamental error occurred since the state failed

4

to prove the elements that an aggravated battery occurred. (DE#1:53).

To the extent the claims raised in this motion are inter-related or duplicative, those issues will be discussed together.

## II. Procedural History

The extensive procedural history of this case can be summarized as follows. Williams was charged by way of an amended Information with unlawful possession of a firearm by a convicted felon (Count 1); robbery using a firearm (Counts 2-6); aggravated battery with a firearm (Counts 7-8); armed burglary with assault or battery (Count 9) and kidnaping with a weapon (Counts 10-14). (App.A:28-43).

The case proceeded to trial and on October 28, 2004, Williams was convicted by a jury of one count of possession of a firearm by a convicted felon, five counts of armed robbery with a mask, two counts of aggravated battery, five counts of armed kidnaping with a firearm and wearing a mask, and one count of armed burglary with a firearm and assault or battery. (App.A:235-240).

On March 11, 2005, Williams was sentenced to 15 years imprisonment as to Count 1, life in prison as to Counts 2-6,9-14, and 30 years imprisonment as to Counts 7 and 8. The court further ordered Counts 7 and 8 to run consecutive to each other and consecutive to Count 1. Also, Count 9 was to run consecutive to Count 8 and Counts 10-14 to run consecutive to Count 9, but concurrent with each other. Finally, the court imposed a minimum mandatory 10-year sentence for Counts 2-14 for the possession and use of a firearm. (App.A:261-266). Thereafter, pursuant to a motion

to correct illegal sentence, the trial court vacated the minimum mandatory sentence. (App.I).

On April 08, 2005, a notice of direct appeal was filed and thereafter transmitted to the Third District Court of Appeal in case number 3D05-813. Then, on August 10, 2006, an <u>Anders</u>[3] brief was filed, wherein counsel referenced a possible error with the trial court's denial of Williams' motion for mistrial after the state introduced evidence that Williams informed the detective that he would not permit her to photograph his teeth despite the issuance of a court order permitting the detective to do so. (App.G). Thereafter, the district court, on October 18, 2006, affirmed Williams' conviction and sentence. (App.H).

Williams, <u>pro se</u>, actively pursued state post-conviction relief, when on December 29, 2006, he filed his first motion pursuant to Fla.R.Crim.P. 3.850, raising **claims three, five, six, seven, eight and nine** of this federal petition, as listed above. (App.J).

Thereafter, on January 2, 2007, July 5, 2007, July 11, 2007, Williams filed supplemental briefs (App.J) to his 3.850 motion, raising **claim ten** of this federal petition, as listed above, along with the following claims:

1.   Trial counsel was ineffective for failing to impeach state witness Adonis Vargas.

2.   The state knowingly and willfully used perjured and fraudulent testimony from state witness Vargas.

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

3.    Trial counsel was ineffective for failing to object to state witness "Vargas" identification of defendant, Williams as having "dreads."

4.    Defendant challenges his convictions of armed robbery and aggravated battery on grounds of double jeopardy.

On September 14, 2007, the trial Court denied Williams' first 3.850 motion on the merits with opinion. (App.L). Notwithstanding, on October 2, 2007, Williams filed a motion for re-hearing of his 3.850 denial (App.M), which was subsequently denied on November 26, 2007. (App.O).

A notice of appeal regarding his 3.850 motion was filed on December 17, 2007 (App.C), in case number 3D08-127, which was subsequently transmitted to the district court on January 23, 2008. (App.P). On December 28, 2007, Williams filed his initial brief arguing:

1.    [T]rial Court failed to address and refute Appellant claim asserted on the Appellant 3.850 motion that trial counsel was ineffective for failing to test the evidence. This claim was ground H where the trial court failed to address this claim.

(App.Q). On September 3, 2008, the district court affirmed the trial court's denial of Williams' post-conviction motion. (App.P).

On August 26, 2007, while the first Rule 3.850 proceeding was pending, Williams filed in the appellate court a habeas corpus petition, case number 3D07-2223, arguing that appellate counsel was ineffective for failing to request a Frye hearing and that the state engaged in prosecutorial misconduct when it permitted Adonis

Vargas' perjured testimony. (App.S). Notwithstanding, on September 26, 2007, the district court denied his petition. (App.T).

Then, on October 2, 2007, Williams filed a motion for post-conviction DNA testing claiming that although the state performed a DNA test, the evidence was never tested by the defense. (App.W). As such, an independent test was necessary to confirm that he was not at the crime scene and therefore did not participate in the offense. (<u>Id.</u>).

On November 26, 2007, the trial court denied Williams' motion for post-conviction DNA testing. (App.C & App.Y). In its order, the trial court noted that Williams' request did not correctly fall under the provisions of post-conviction DNA testing statute. (App.Y:15).

On December 3, 2007, Williams filed a second Rule 3.850 motion arguing that the trial court committed fundamental error when it allowed the state to use the "and/or" contraction in its charging documents and jury instructions. (App.U). On April 4, 2008, the trial court denied Williams' motion. However, that same day, the court vacated the order because the state informed the court that Williams, on March 21, 2008, after the state's response but prior to the court's order, had filed a Motion for Voluntary Dismissal, due to pending appeals. (App.C, App.JJ:5).

On March 31, 2008, it appears Williams filed a third motion for post-conviction relief, followed by six amended motions for post-conviction filed on March 31, 2008, April 2, 2008, April 14, 2008, April 28, 2008, June 6, 2008 and July 18, 2008,

respectively.[4] (<u>See</u> App.JJ; 11th Judicial Circuit Court, case number F02-37491B).

The March 31, 2008, 3.850 motion raised **claims eleven, twelve and thirteen** of this federal petition, as listed above, along with the following claims:

1. That there was fundamental error in his trial because the trial transcript does not reflect an oath given by the DNA expert, Amy Mason, prior to her testimony in trial.

2. That the trial court committed fundamental error by denying the Defendant's request for judicial notice and the Defendant's request for the Court to investigate a legal matter (although the Defendant again does not specify the basis for which judicial notice was requested).

3. That the trial court committed fundamental error by

---

[4]Footnote 7 of the Omnibus Order dismissing Williams' Motions to Vacate Judgment and Sentence Pursuant to Rule 3.850, Dated December 3, 2007, March 31, 2008, March 31, 2008, April 14, 2008, April 28, 2008, June 6, 2008, and July 18, 2008, reads:

> Because the Defendant's postconviction motions have the same or similar titles, the Clerk's docket sheet entries cannot be used to distinguish the Defendant's Motions. Each motion does include the date that the un-notarized oaths and certificates of service were made, and sometimes include stamps reflecting when motions were provided to the jailers for mailing, and on some other occasions, Clerk of Court dates. Therefore, for each of reference and consistency, the un-notarized oath dates have been used herein to identify the Defendant's Motions. However, on some occasions, like this one, it becomes obvious that the Defendant signed the motion on a date different that when it was prepared, making the assortment of motions somewhat confusing.

(App.JJ).

denying the Defendant's request for judicial notice and the Defendant's request for the Court to investigate a legal matter (although the Defendant again does not specify the basis for which judicial notice or investigation was requested).

4. That the trial court failed to follow the procedural rule 3.172 regarding a required inquiry concerning whether DNA evidence exists to exonerate the Defendant prior to acceptance of a plea of guilty or nolo contendere.

5. That state witness Janel Ruiz committed perjury, which the Defendant alleges, was discovered after 'this fact was revealed to Defendant by a mutual friend who's assisting Defendant with his legal work.'

(App.JJ). Williams' amended motion for post-conviction relief, also dated March 31, 2008, raised **claim fifteen** of this federal petition, as listed above. (App.JJ).

The amended 3.850 motion filed on April 2, 2008, raised the following claim:

1. That trial counsel was ineffective for his failure to retain a DNA expert; for his lack of opposition to the admission of photographs of the victims' property, pursuant to Florida Statute 90.91; and trial counsel's failure to request a Frye hearing for the DNA evidence.

(App.JJ).

10

Then, on April 14, 2008, Williams filed another amended motion for post-conviction relief wherein he argued that all of the offenses in his case arose from one criminal episode, and therefore, the trial court improperly imposed consecutive minimum-mandatory sentences in counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14. (App.JJ.).

On April 28, 2008, the petitioner once again filed another amended motion for post-conviction relief arguing **claim nineteen** of this federal petition, as listed above. (App.JJ). He also argued there was no offense of burglary with a battery, that the state failed to prove that the defendant wore a ski mask or hood because those items were not found inside the restaurant where the crime occurred and that the state failed to prove the intended crime to be committed inside the restaurant. (<u>Id.</u>).

Subsequently, on June 6, 2008, Williams filed yet another motion for post-conviction relief raising **claims four and seventeen** of this federal petition, as listed above, along with the following claims:

1. That the Defendant will produce evidence that Detective Kathleen Way was not the detective that submitted the two ski masks to the crime lab to be tested for DNA because such evidence was in the custody of Detective Ordonez according to the trial testimony of Detective Ordonez, and that Detective Way cannot testify that she was accompanied by Detective Dixon because Detective Dixon did not consent to such testimony.

2. That the Defendant is not aware of whether the State forwarded a copy of the lab report to trial counsel in

discovery, that the Defendant was not aware that there was DNA evidence against him until his trial began, and if trial counsel received the report, then trial counsel sabotaged his defense.

(App.JJ). Finally, on July 18, 2008, Williams filed his final amended motion for post-conviction relief raising **claim eighteen** of this federal petition, as listed above.(Id.).

Four days after the trial court's decision regarding Williams' subsequent 3.850 motion, the petitioner, on April 8, 2008, filed a petition for writ of mandamus with the district court in 3D08-943 claiming that his second post-conviction motion was not successive and should have been voluntarily dismissed rather than denied. (App.Z). Williams further requested the district court to compel the trial court to dismiss his second post-conviction motion and instead, review his subsequent amended motions filed on March 31, 2008 and April 2, 2008. (Id.). Notwithstanding his contentions, on May 1, 2008, the district court denied the petition. (Id.). Then, on June 5, 2008, the trial court also denied Williams' motion for reconsideration without mandate. (Id.).

While the appeal of his first post-conviction motion and the petition for writ of mandamus were pending before the district court, Williams, on April 30, 2008, filed a notice of appeal in case number 3D08-1056, regarding the trial court's denial of his second post-conviction motion. (App.DD). Specifically, Williams argued: 1) his second post-conviction motion was not successive and should have been voluntarily dismissed rather than denied; 2) the trial court improperly imposed consecutive minimum mandatory life sentences, two 30-year sentences and a 15-year sentence all stemming from the same criminal offense; 3) appellate counsel was

ineffective for failing to take advantage of errors that had been preserved at trial; and 4) there was no case law that states that all issues and grounds must be raised at once. (App.DD).

On July 2, 2008, the district court affirmed the trial court's decision. (App.DD). On July 14, 2008, a motion for rehearing was filed, which was subsequently denied on August 28, 2008. (Id.).

On September 10, 2008, Williams filed his second habeas corpus petition under 3D08-2389 (App.AA, App.BB), wherein he argued the following claims:

1.   Det. Greg Robinson's non-testimony violated the confrontation clause and the alleged offenses were not supported by Det. Robinson to sustain a conviction against the Petitioner.

2.   Det. Ruiz filed false charges against Petitioner regarding the robbery because the lead investigator of the armed robbery South Miami PD Det. Robinson never testified at trial.

3.   Since Det. Robinson never testified at trial there was no evidence of probable cause to justify the stop of Petitioner.

4.   No witnesses testified under what authority the search of the Durango was conducted.

5.   The Petitioner's incarceration is wrong because Det. Robinson failed to testify and Det. Ruiz's charges are false.

6. Det. Way's testimony failed to establish that Petitioner was involved with the robbery.

7. Det. Robinson as the lead investigator of the robbery was the only investigator that should have brought charges against him and his failure to do so demonstrated that Petitioner's conviction was illegal and should not stand.

8. Since the separate case of the carjacking was nolle prossed, the instant case without the underlying offense, should have also been dismissed.

On September 16, 2008, an amended petition was filed with respect to claim three as raised therein, alleging a <u>Crawford</u> violation.[5] (App.CC). Subsequently, on September 29, 2008, the district court denied the petitions. (App.AA).

On January 6, 2009, Williams filed his second petition for writ of mandamus, in case number 3D09-74, arguing that on June 6, 2008, he had filed a 3.850 motion, which the state had failed to respond to due to the trial court's numerous continuances. (App.FF).

On January 29, 2008, the state filed a response informing the court that the post-conviction motion had been set for a hearing the following week and that the state would provide the district court with a status of the motion at that time. (App.GG).

On February 9, 2009, the trial court addressed Williams' motions for post-conviction relief, filed respectively on March 31,

_____

[5] <u>Crawford v. Washington</u>, 541 U.S. 36 (2002).

2008, April 2, 2008, April 14, 2008, April 28, 2008, June 6, 2008
and July 18, 2008. (See App.JJ; 11th Judicial Circuit Court, case
number F02-37491B). The state trial court determined that Williams'
claims were successive and an abuse of the process. (App.JJ).
Moreover, Williams was ordered to show cause why he should not be
prohibited from filing any further motions without the approval and
signature of an attorney licensed to practice law in the State of
Florida. (Id.).

Thereafter, on February 9, 2009, Williams filed an amended
petition with the district court claiming that the state should
address his claims on the merits, and not solely dispose of his
claim as successive. (App.HH).

On March 25, 2009, the state filed its response (App.II),
noting that the trial court had disposed of Williams' several post-
conviction motions when it filed an omnibus order (see App.JJ),
dismissing seven pending post-conviction motions stating they were
successive and an abuse of the process. (Id.). On April 1, 2009,
the district court dismissed Williams' second petition for writ of
mandamus as moot. (App.FF).

Prior to the appellate court's dismissal of Williams' second
petition for writ of mandamus, on February 11, 2009, Williams filed
his third habeas corpus petition under 3D09-393 raising **claims one
and two** of this federal petition, as listed above. (App.EE).
However, on April 2, 2009, the district court denied the petition
without requiring a response. (Id.)

On April 27, 2009, Williams filed a notice of appeal, case
number 3D09-1324, regarding the trial court's April 2009 omnibus
order denying seven of his post-conviction motions. (App.KK). In

15

his initial brief, filed on May 15, 2009, raising **claims thirteen and fifteen** of this federal petition, as listed above, along with the following claims:

1. State failed to refute petitioner's claims that are not on the face of the record, arguing petitioner's claims are successive.

2. Newly discovered evidence could be raised on a successive motion, where he recently discovered that Det. Ruiz had perjured himself.

3. The trial court erred when it used the "and/or" conjunction in the jury instructions in referring to the victims.

4. The trial court committed fundamental error in giving a defective burglary instruction which included with "assault or battery."

6. The state erred when it failed to provide evidence of a proper chain of custody.

7. The trial court erred when it permitted perjured testimony from Det. Ordonez and Det. Way.

(App.LL). Then, on May 13, 2009, an amended brief was filed raising, for the first time, **claims eleven and fifteen** of this federal petition, as listed above, accompanied by the following claims:

1. Trial court erred in allowing the perjured testimony of

Det. Ruiz.

2.   State erred when it vouched for two of its witnesses in closing argument.

3.   Trial court erred on the elements of the kidnaping offense.

4.   Trial court erred in the instructions given to the jury regarding the elements of burglary.

5.   State failed to refute Petitioner's claim that the property receipts were newly discovered evidence.

6.   Det. Ruiz perjured himself regarding being the detective that impounded the rifle.

7.   Det. Ordonez and Det. Way perjured themselves regarding the chain of evidence.

8.   Trial court erred in summarily denying Petitioner's 3.850 motion without a hearing.

(App.MM). Notwithstanding Williams' efforts, on June 10, 2009, the district court affirmed the trial court's action. (App.MM). On June 22, 2009, Williams filed a motion for rehearing, which was subsequently denied on July 1, 2009. (Id.).

Not long after the conclusion of all state court proceedings, Williams came to this Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2255.

17

### III. Statute of Limitations

The respondent concedes the petitioner's 28 U.S.C. §2254 motion was timely filed.

### IV. Exhaustion & Procedural Default

The respondent correctly concedes that Williams is entitled to review on the merits of **claims three, five, six, seven, eight, nine, ten and a portion of claim four** of the instant petition, because they have been properly exhausted and are not subject to any procedural bars. (Cv-DE#20:50). <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A). <u>See also</u> <u>Cone v. Bell</u>, ___ U.S. ____, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). As to claims **one, two, four, eleven through nineteen**, the respondent asserts that review on the merits of these claims is not warranted based upon various procedural impediments. The procedural defenses will be addressed below in conjunction with the discussion on the specific claims.

### V. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

Moreover, in the instant case, the Petitioner seeks habeas relief based, in part, on ineffective assistance of counsel. The United States Supreme Court clearly established the law governing such claims in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency

prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

Combining AEDPA's habeas standard and Strickland's two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, the petitioner must show the state court "applied Strickland to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. Bell v. Cone, 535 U.S. 685, 699 (2002).

In the instant case, the Petitioner also seeks habeas relief based on ineffective assistance of appellate counsel. To show that his appellate counsel was ineffective, the movant must establish that his appellate counsel performed deficiently and that the deficient performance resulted in prejudice. Joiner v. United States, 103 F.3d 961 (11th Cir. 1997). To determine prejudice, we must review the merits of an omitted claim. If we find that the omitted claim would have had a reasonable probability of success on

appeal, then counsel's performance necessarily resulted in prejudice. Id.; citing Heath v. Jones, 941 F.2d 1126, 1136 (11th Cir. 1991).

## VI. Discussion

### A. Ineffective Assistance of Appellate Counsel

In **claim one**, the petitioner asserts he was denied effective assistance of appellate counsel when his attorney failed to make claims on direct appeal which had been preserved and were subsequently barred from his 3.850 motion since the state noted the error should have been claimed on direct appeal. (DE#1:7).

Specifically, Williams argues his appellate counsel was ineffective for failing to raise certain claims on direct appeal when the state, by its own admission, advised that his claims should have been made on direct appeal and not in a 3.850 motion. (DE#1:7).

Williams refers to the state's response to his 3.850 motion in support of his contention, wherein the state argued Williams "blames trial counsel 'for failing to correct the trial court's error that a Frye hearing no longer existed.' [T]his allegation is one that could have or should have been raised on direct appeal as it relates directly to a claim that the court erred." (See App.K:23). Despite Williams' contention, the state's argument was not advising him that he had a valid claim that should have been raised on direct appeal, but rather any claim of a trial court error was not cognizable in a 3.850 motion.

The movant's underlying claim appears to be that the trial

court erred in not conducting a <u>Frye</u> hearing[6] to determine if the testing method of DNA was reliable. Despite the movant's contentions, a <u>Frye</u> hearing was not necessitated as the testing method utilized by Ms. Mason was generally accepted in the scientific community.

At trial, Amy Mason, a forensic biologist with the DNA Section of Miami Dade Crime Laboratory, conducted the DNA analysis in Williams' criminal case. (App.F:1134-1145). Ultimately, based on her education, experience publications, memberships, teaching, testing, professional organizations and knowledge, Ms. Mason qualified as an expert of forensic biology, DNA analysis and statistical interpretation of DNA data using population frequency. (<u>Id.</u>:1134-1139).

Ms. Mason testified that Miami Dade Crime Laboratory uses a DNA testing method known as Short Tandem Repeat or STR. (App.F:1142). She further testified that STRs is a state of the art technology which involves obtaining DNA profile by copying DNA. (<u>Id.</u>). Moreover, her testimony revealed that STR is used in forensic laboratory throughout the United States and also around

---

[6]In Florida, DNA testing requires a two-step process, one biochemical and the other statistical. <u>See</u> <u>Butler v. State</u>, 842 So.2d 817, 828 (Fla. 2003). First, a biochemical analysis determines that two samples are alike, and then statistics are employed to determine the frequency in the population of that profile. <u>See</u> <u>id</u>. The Florida courts have held that both steps must satisfy the <u>Frye</u> test for validity. <u>See</u> <u>id.</u> at 828. The <u>Frye</u> court held that while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs. <u>Frye v. United States</u>, 293 F. 1013, 1014 (D.C. Cir. 1923). Thus, the <u>Frye</u>-test requires that the scientific principles or methodologies to which an expert testifies must be generally accepted in the scientific community before they will be considered valid in the courts. <u>Id.</u> It is well accepted in Florida that DNA methodology conducted properly satisfies the <u>Frye</u> test. <u>See</u> <u>Hayes v. State</u>, 660 So.2d 257 (Fla. 1995). In the federal courts <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993) is instead controlling to determine if expert scientific opinion is admissible.

the world. (Id.:1143).  She was also aware of numerous government publications that have validated the reliability of this testing method. (Id.).

Moreover, in 2001, the Third District Court of Appeal, in Lemour v. State, 802 So.2d 402 (Fla. 3d DCA 2001), held that STR testing was generally accepted by the scientific community.

Therefore, a Frye hearing was not necessary to determine whether the method used by Ms. Mason was reliable. Consequently, Williams cannot establish either deficient performance or prejudice of appellate counsel pursuant to Strickland. Under these circumstances, the rejection of the claim in the State forum was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).  Williams v. Taylor, 529 U.S. 362 (2000).

In **claim two**, the petitioner asserts he was denied effective assistance of appellate counsel when his attorney failed to raise and argue on direct appeal ineffective assistance of trial counsel which was evident from the record. (DE#1:9).

It appears Williams argues his appellate counsel was ineffective for failing to argue that trial counsel's ineffectiveness was so obvious, it should have been raised on direct appeal. (DE#1:9). Specifically, Williams claims trial counsel was ineffective for failing to request a Frye hearing.

The movant's claim with respect to the Frye hearing is a mere reiteration of the argument raised in relation to **claim one** of this

report and should be denied for the reasons expressed therein.

In **claim three**, the petitioner asserts he was denied effective assistance of appellate counsel when his attorneys failed to argue on direct appeal that trial counsel was ineffective for failing to obtain a DNA expert. (DE#1:10).

Despite Williams' contentions, even if counsel's performance could in someway be deemed deficient for failing to have his own DNA expert, Petitioner suffered no prejudice as a result of counsel's inaction in that there is no reasonable probability that had he done so the outcome of the trial would have been different. See Strickland, supra; see also Carroll v. State, 815 So.2d 601, 613 (Fla. 2002).

Here, evidence admitted at trial revealed that the DNA obtained from the rifle and the t-shirt had the same molecular composition as the victim's DNA (App.F:1158-1162). In support thereof, testimony revealed that the statistical frequency of the DNA profile found on the t-shirt and on the rifle matching the DNA profile of a randomly selected individual other than the victim is one in two hundred and five trillion. (App.F:1159,1162). Moreover, the testimony also indicated that the major DNA profile found on the ski mask matched the DNA standard of Williams. (App.F:1164-1167). In support thereof, testimony revealed that the statistical frequency of the major DNA profile found on the ski mask matching the DNA profile of a randomly selected individual other than Williams was also one in two hundred and five trillion. (App.F:1167).

Williams' apparent assertion that if a DNA expert had been hired, he would have been exonerated of the subject offenses in that the hiring of a DNA expert would have proved that someone else had been the perpetrator is wholly conclusory with no support whatever in the record.[7] There is no competent evidence of record that testing and testimony by a defense expert would have provided any exculpatory testimony. The lack of a specific, affirmative showing of any exculpatory evidence leaves Williams' claim purely speculative and well short of the prejudice required by Strickland. Speculation about what witnesses could have said is not enough to establish prejudice. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997). See also White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.").

Since Williams cannot establish that he was prejudiced by the alleged deficient performance, he is not entitled to habeas corpus relief on claim three. See also Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002)(holding that where there is no reasonable probability that the alibi testimony would have changed the outcome of the trial, given the strength of the evidence admitted at trial, the trial court's application of Strickland's prejudice prong in post-conviction proceeding was not objectively unreasonable).

In **claim four**, Williams asserts he was denied effective

---

[7]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

assistance of appellate counsel when his attorney failed to object to a <u>Giglio</u> violation, perjured testimony, the admission of the second cell phone into evidence, failed to claim error on the burglary jury instruction and permitted the admission of DNA evidence without expert testimony. (DE#1:11).

The state argues that the portion relating to the <u>Giglio</u> violation was exhausted, however the balance of the claim relating the cell phone, error on the burglary jury instruction and the admission of the DNA evidence without expert testimony have not been exhausted. (DE#20:51).

The Court declines to engage in an analysis of procedural bar with respect to this claim in the interest of judicial economy and addresses the petitioner's claim on the merits. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997)(although procedural issues should generally be addressed before considering the merits of a claim, the courts may reach the merits first in the interest of judicial economy); <u>Peoples v. Campbell</u>, 377 F.3d 1208 (11th Cir. 2004)(a habeas petition can be denied on the merits notwithstanding the applicant's failure to exhaust state-court remedies); <u>see also</u> <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1162 (8th Cir. 1999)(judicial economy sometimes dictates reaching the merits if they are easily resolvable against a petitioner and the procedural bar issues are complicated).

Specific to Williams' <u>Gilgio</u> violation, he argues state witness Detective Janel Ruiz lied and perjured himself about being the person who impounded the rifle, when in fact Detective Castillo was the one who did so, thus warranting a new trial. (DE#22:7; <u>see also</u> App.F:1259). In support thereof, Williams argues that it is

the state's contention that Det. Ruiz simply discovered the weapons. (<u>Id</u>.). Contrary to Williams' arguments, the state at no point changes its position.

In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a <u>Brady</u> violation must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. <u>LeCroy v. Fla. Dept. of Corrections</u>, 421 F.3d 1237, 1268 (11th Cir. 2005); <u>United States v. Meros</u>, 866 F.2d 1304, 1308 (11th Cir. 1989). <u>See also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999); <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11th Cir. 1986). Moreover, this duty covers not only exculpatory material, but also information that could be used to impeach a key prosecution witness. <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11th Cir. 1987), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. <u>United States v. Alzate</u>, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

First, the petitioner has come forward with nothing to show that the state knowingly withheld this information. Such a conclusory and speculative contention falls far short of

establishing that a <u>Brady</u> violation occurred. A court cannot speculate as to what evidence the defense might have found if the information had been disclosed. <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999). Since the petitioner here essentially has done no more than speculate that the disclosure of the alleged witnesses and evidence might have assisted his defense in some unspecified way, his claim of a <u>Brady</u> violation fails.

Likewise, the petitioner has failed to establish in this federal proceeding, as well as in the state forum, that the result of the trial would have been different if the allegedly suppressed information had been disclosed to the defense." <u>Strickler v. Green</u>, 540 U.S. 263, 287 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). <u>See also Strickler</u>, 540 U.S. at 287 ("[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.") (quotation omitted). No such showing has been made here. Regardless, as previously narrated in this Report, the outcome of the trial would not have been affected had this information been brought before the jury.

In conclusion, given the evidence adduced at trial, there is nothing of record in the state forum or this federal proceeding to establish a <u>Brady</u> violation. Given the totality of the evidence in the light most favorable to the prosecution, the movant has failed to establish deficient performance or prejudice arising from counsel's failure to pursue the state's alleged <u>Brady</u> violations.

The petitioner has failed to demonstrate in this proceeding that the outcome of the guilt phase of his trial would have resulted in an acquittal of the charges. Thus, he is entitled to no relief on this claim.

To the extent Williams raises a due process claim that his conviction was based upon false or perjured testimony, any such claim must also fail. A defendant is denied due process when a state knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). There is no evidence whatever of perjured testimony and/or false evidence and/or prosecutorial misconduct. The fact that the petitioner takes issue with the testimony of certain state witnesses does not mean that such testimony was untruthful or a product of misconduct on the part of the state. Moreover, the witnesses were subject to cross-examination by defense counsel regarding their credibility and the reliability of their testimony and defense counsel in fact conducted thorough and forceful cross-examination of such witnesses. It is apparent that the jury rejected the defense presented and, instead, believed the state's theory and strong evidence presented by the state, as was its prerogative. Thus, the petitioner is not entitled to federal habeas corpus relief on any prosecutorial misconduct claim. Therefore, the state court's denial of this claim is in accord with federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

Moreover, Williams' apparent assertion that trial counsel should have argued that no second cell phone was retrieved from the Durango is wholly conclusory with no support whatever in the

record.[8]   There   is   no   competent   evidence   of   record   that   any
objection   and/or   argument   thereto   by   counsel   would   have   resulted   in
a   different   outcome   at   trial.   The   lack   of   a   specific,   affirmative
showing   of   any   exculpatory   evidence   leaves   Petitioner's   claim
purely   speculative   and   well   short   of   the   prejudice   required   by
Strickland.   See   White v. Singletary,   972   F.2d   1218,   1220   (11th   Cir.
1992)("Courts   should   at   the   start   presume   effectiveness   and   should
always   avoid   second-guessing   with   the   benefit   of   hindsight.").

To   the   extent   Williams   argues   fundamental   error   with   respect
to   the   jury   instruction   on   burglary,   this   claims   fails   to   warrant
relief.   Neither   in   the   State   forum   nor   in   this   habeas   proceeding
has   the   petitioner   identified   with   specificity   how   trial   counsel
was   ineffective   for   failing   to   object   to   the   jury   instruction   on
burglary.   Such   a   bare   and   conclusory   allegation   is   subject   to
summary   dismissal.   Machibroda v. United States,   368   U.S.   487
(1962).   Consequently,   the   movant   cannot   establish   either   deficient
performance   or   prejudice   pursuant   to   Strickland.

To   the   extent   Williams   argues   his   DNA   was   improperly   admitted
without   testimony   from   his   own   expert,   this   claim   is   a   mere
reiteration   of   **claim three**   of   this   report   and   should   be   denied   for
the   reasons   stated   therein.

### B. Ineffective Assistance of Trial Counsel

In   **claim five**,   the   petitioner   asserts   he   was   denied   effective
assistance   of   trial   counsel   when   his   attorney   failed   to   provide   the
petitioner   his   own   DNA   expert.   (DE#1:13).

---

[8]See   FN   7,   supra.

This claim is a mere reiteration of the issue raised with respect to **claim three** of this report and should be denied for the reasons stated therein.

In **claim six**, the petitioner asserts he was denied effective assistance of trial counsel when his attorney failed to request a Frye hearing as to the introduction of statistical DNA evidence. (DE#1:19).

This claim is mere reiteration of the issue raised with respect to **claim one** of this report and should be denied for the reasons stated therein.

In **claim seven**, the petitioner asserts he was denied effective assistance of trial counsel when his attorney failed to present exculpatory evidence at the petitioner's trial. (DE#1:21).

Specifically, Williams argues trial counsel was ineffective for failing to obtain or view the restaurant's surveillance tapes and had counsel obtained said tapes,[9] Williams would have been acquitted of all the charges since they would have revealed he was not one of the perpetrators. (DE#1:21).

When the identical claim was raised in the petitioner's Rule 3.850 motion, the court considered the correct federal, legal

---

[9]The state in its response to Williams' 3.850 motion noted that in regards to this claim, "[t]he State's Amended Discovery Exhibit as well as a letter addressed to defense counsel from prior defense counsel show that the surveillance tape was provided to defense counsel. See copy of Discovery Exhibit and Letter annexed hereto as Exhibits C and D." (App.K:29).

Strickland standard, and then denied relief, finding as follows:

> [T]he Defendant fails to articulate how his counsel committed an error by not introducing the surveillance tape as evidence at trial. The defendant does not articulate what the surveillance tape would or would not have shown as to exculpate the Defendant. The Defendant also does not present a theory or an argument as to how the exclusion of the surveillance tape was prejudicial to his defense. Thus, the Defendant failed to meet his burden of proving that the representation was unreasonable under the prevailing professional norms and that the challenged action was not strong strategy. 466 U.S. at 688-89.

> This Court recognizes that the State had the surveillance video enhanced in an effort to further determine the identity of his assailants, whether they were Defendants or someone else. Notwithstanding the enhancement, the video proved to be inconclusive. The assailants were not at all identifiable, and in fact, briefly seen. The video does, however, corroborate Adriana Vargas' testimony that she started to enter Cami's, but quickly decided against it. A copy of the tape is annexed hereto as Exhibit E.

> As stated above, a defendant may not simply file a motion for post-conviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. *Kennedy v. State*, 547 So.2d 912, 913 (Fla. 1989). A defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant. *Id.* at 913. This means a defendant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. *Id.* Because the Defendant has failed to specifically identify trial counsel's alleged error regarding the surveillance tape and the prejudice flowing from that error and because his claim is clearly refuted by the record, the Defendant's claim is denied

without an evidentiary hearing.

(App.L:29-30). The trial court's denial was <u>per curiam</u> affirmed, as to this claim. (App.P).

Neither in the state forum nor in this habeas proceeding has the petitioner identified with specificity how trial counsel was ineffective for failing to obtain the video resulted in either deficient performance or prejudice. Such a bare and conclusory allegation is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Consequently, the movant cannot establish either deficient performance or prejudice pursuant to <u>Strickland</u>.

In **claim eight**, the petitioner asserts he was denied effective assistance of trial counsel when his attorney failed to attempt to challenge or refute the method used by DNA expert Mary Mason to obtain statistical frequency. (DE#1:22).

Specifically, he takes issue with the statistical significance of the DNA comparisons being calculated using the product rule. (App.F:1137-1138). With respect to this calculation method, Williams claims he was entitled to a <u>Frye</u> hearing in order to determine whether the calculation method used by the expert was reliable. (DE#1:22).

When the identical claim was raised in the petitioner's Rule 3.850 motion, the court considered the correct federal, legal <u>Strickland</u> standard, and then denied relief, finding as follows:

33

Ms. Mason testified that the statistical frequency of the DNA profile found on the t-shirt and on the rifle matching the DNA profile of a randomly selected individual other than Maria Sotelo is one in two hundred and trillion. (T.1159,1162). Ms. Mason further testified that the statistical frequency of the major DNA profile found on the ski mask matching the DNA profile of a randomly selected individual other than Donald Williams is also one in two hundred and five trillion. (T.1167). The statistical significance of the DNA comparisons was calculated using the product rule. (T.1137-1138). Regarding the calculation method, the Defendant claims, '[b]y law the [Defendant] was entitled to a Frye hearing in order to determine whether the calculation techniques of the State's DNA witness used to determine statistical frequency of DNA match to the [D]efendant was reliable.' Defendant's December 19 brief at p.9.

However, the Supreme Court of Florida has recognized the reliability and accepted the use of the product rule since its 1997 decision in *Brim*. The Court considered the concern at the time the case was tried that the failure to account the population substructures made the product rule statistics unreliable. 695 So.2d 273. That view has changed since the inception of that case, and the Court found that the ceiling principles, which accounted for population structures, were no longer necessary. *Id.* Nonetheless, the Court stated that such a finding does not render the product rule statistics unreliable: 'While the results obtained through the use of 'ceiling principles' might be unduly conservative, the scientific principles underlying the calculations are still generally accepted.' *Id.* The Third District Court of Appeal[] similarly ruled in an earlier decision that 'DNA match probability calculations under the product rule are admissible in this district, and evidence based upon the ceiling principle is not.' *Clark v. State*, 679 So. 2d 321,322 (Fla. 3d DCA 1996). In further concluding that 'product rule calculations are appropriate as a matter of scientific fact and law,' the Court of Appeal[] relied on a report by the National Research Council, as well as the decisions of other jurisdictions. *Id.* at 321 (*citing* Committee on DNA Forensic Science, National Research Council, The Evaluation of Forensic DNA Evidence (prepublication copy 1996); *U.S. v. Bonds*, 12 F.3d 540 (6th Cir. 1993); *U.S. v. Jakobetz*, 955 F.2d 786 (2d Cir. 1992); *Fishback v. People*, 851 P.2d 884 (Colo. 1993);

*People v. Adams*, 489 N.W.2d 192 (Mich. Ct. App. 1992; *State v. Pierce*, 597 N.E.2d 107 (Ohio 1992)).

In a more recent case, the Supreme Court of Florida upheld its decision in *Brim* and denied the defendant's claim that the DNA expert's use of the product rule to determine population frequencies was error. *Butler v. State*, 842 So.2d 817, 829 (Fla. 2003). The Court followed decisions of this jurisdiction as well as others that have accepted the use of the product rule. *Id.* (citing 695 So.2d 321; 12 F.3d 540; 955 F.2d 786). The Court found the defendant's contention 'inaccurate in light of the case law that continues to uphold the validity of the product rule.' 842 So.2d 829.

In this case, the statistical analysis using the product rule yielded a population frequency of one in two hundred and five trillion for the DNA profiles of Maria Sotelo and Donald Williams. (T.1159, 1162, 1167). As the *Brim* Court described, this figure functions as a quantitative estimate to demonstrate the significance of the molecular matches that Ms. Mason found using the STR method. 695 So.2d at 271. Further, in accordance with the decision in *Butler*, this figure cannot be challenged on the ground that the method used in calculation is unreliable or should be subject to a *Frye* hearing. As the courts in this and numerous other jurisdictions have recognized the validity and the general acceptance of the product rules as a matter of law, the Defendant cannot successively argue (1) that his trial counsel erred in failing to obtain a DNA expert to refute the statistical method used by the State's DNA expert, or (2) that a Frye hearing should have been requested prior to the introduction of the State's statistical DNA evidence. Therefore, in light of the established case law regarding the product rule, the Defendant's claim for ineffective assistance of counsel fails to prove 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' 466 U.S. at 687. As the Defendant failed to meet his burden of proving that the representation was unreasonable under the prevailing professional norms and that the challenged action was not strong strategy. (*Id.* at 688-89), the Defendant's motion is denied without an evidentiary hearing.

35

(App.L:20-22). The trial court's denial was <u>per curiam</u> affirmed, as to this claim. (App.P).


Counsel's strategic decision to not challenge or refute the method used by DNA expert Mary Mason to obtain statistical frequency was not unreasonable. Federal law clearly holds that tactical or strategic choices cannot support a collateral claim of ineffective assistance. <u>McNeal v. Wainwright</u>, 722 F.2d 674 (11th Cir. 1984); <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982);[10] <u>see also</u> <u>United States v. Hughes</u>, 635 F.2d 449, 452 (11th Cir. 1981). Under the totality of the circumstances present here, even if counsel objected accordingly, no showing has been made that it would have affected the guilt phase portion of the trial, especially in light of case law finding that reliability and accepted use of the product rule since 1997.


Accordingly, the ineffective assistance of trial counsel claim is meritless and the state appellate court's rejection of the underlying claim in the Rule 3.850 proceeding was clearly proper and should not be disturbed in this federal proceeding. <u>See</u> 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>See also</u> <u>Knowles v. Mirzayance</u>, ____ U.S. ___, 129 S.Ct. 1411, 1420.


In **claim nine**, the petitioner asserts he was denied effective

---

[10]Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983). <u>See also</u> <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995)("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess."); <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000)(<u>en</u> <u>banc</u>), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001)(holding that counsel cannot be deemed incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy")(<u>quoting</u> <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986)).

assistance of trial counsel when his attorney failed to provide the petitioner with his own DNA expert. (DE#1:24).

This claim is a mere reiteration of the issue raised with respect to **claim three** of this report and should be denied for the reasons stated therein.

In **claim ten**, the petitioner asserts he was denied effective assistance of trial counsel when his attorney failed to conduct an independent test of the evidence rather than relying on the state's experts. (DE#1:26).

Specifically, Williams contends counsel should have tested the blood found on the rifle and the blood found on the t-shirts to determine whether it belonged to the victim, as well as the DNA found on the ski cap and whether it belonged to him.

When the identical claim was raised in the petitioner's Rule 3.850 motion, the court considered the correct federal, legal Strickland standard, and then denied relief, finding as follows:

> [T]he Defendant contends, 'Counsel failure [sic] to have the evidence tested himself left the defense in a critical position [sic] not knowing how to prepare for trial or know on [sic] what strategy to use, simply because [c]ounsel did not have the evidence tested . . . . Counsel relied upon the State and took their word.' Defendant's July 12 brief at p.2 (emphasis omitted).
>
> * * * * *
>
> [T]he Defendant argues that the DNA evidence was 'the

[State's] only condemning evidence' against him and that 'the outcome of the trial would have been different' without the DNA evidence. Defendant's December 19 brief at p.8. However, this sweeping assertion is without merit, as no DNA evidence was introduced against the Co-Defendant, Jeffrey Atkins, who was, nonetheless, convicted. The facts of the case, established through the testimony of the victims and of the Detectives involved in the process, inescapably link both Defendants to the crimes for which they were convicted, even without the DNA evidence.

Shortly after the robbery at Cami's, the Defendant was spotted by Detective Ruiz while driving the same Durango in which the gunmen were hiding outside of Cami's just prior to the robbery. Detective Ruiz followed the Durango into an apartment complex where the Defendant threw a rifle out of the vehicle and fled from the driver's seat. Detective Ruiz, never losing sight of the Defendant, chased after the Defendant and apprehended him in an open field near the apartment complex. The Defendant was sweating profusely and out of breath from the chase; he was trying to change his appearance by changing his pants, and in his back pocket was a latex glove, which was used, presumably, while wiping fingerprints from his rifle with a t-shirt. The rifle, which was impounded later, was covered in t-shirts, one of which bore a Cami's logo. The Co-Defendant, who threw a revolver out of the Durango and fled from the passenger's side, was also apprehended. In his pants pocket were the items that were stolen from the victims at Cami's, and he was still wearing his pair of latex gloves. Inside the Durango, other incriminating items such as a Cami's order book, jewelry that belonged to one of the victims and two ski masks were found.

The victims testified that the taller and thinner of the two robbers held a rifle and the shorter and heavier of the two held a revolver. Also, the man with the rifle knew exactly where the money was kept in the restaurant, where the security cameras were located, and how to avoid triggering the security alarm. Not surprisingly, one of the victims later identified the Defendant as a former colleague of hers from Cami's. The Defendant had worked at Cami's for up to a year in 1999. During this time, the Defendant worked in the kitchen where he had a view of

the office and leaned that the safe was kept inside that
office.

Although the gunmen wore ski masks to cover their faces,
other physical descriptions of the gunmen matched the
appearance of the Defendants on the night of the robbery.
Further, the five victims consistently testified that one
of the gunmen struck two of the victims over the head
with his rifle, causing the victims to bleed. The blood
of one of the victims was found on the rifle that was
thrown out of the Durango at the scene of the bailout.
The victim's blood was also on one of the t-shirts that
were covering the rifle. Even though no latent
fingerprints were found on the two guns, a fingerprint
expert testified that one could easily prevent leaving
one's fingerprints by wearing latex gloves and readily
remove fingerprints by wiping them off with a piece of
cloth. Not unexpectedly, latex gloves were found on both
Defendants when they were arrested. The rifle was also
wrapped in t-shirts, which could have been used to wipe
the fingerprints off.

Finally, contrary to the Defendant's assertion that he
does not know the Co-Defendant (Defendant's December 19
brief at p.5), the phone records of the two men link the
Defendant to the Co-Defendant on the night of the
robbery. The phone records also link the Co-Defendant to
one of the victims, whose phone was stolen and used
during the robbery. The aggregate of these and other
facts introduced at trial formed sufficient grounds to
convict the Co-Defendant and thus, the Defendant's
contention that the outcome of his case would have been
different without the DNA evidence is without merit.

(App.L: 27-29). The trial court's denial was <u>per curiam</u> affirmed,
as to this claim. (App.P).

Despite the contentions set forth in this federal habeas
corpus proceeding, Williams fails to provide any evidence that the
tests performed of the evidence were suspect. Second, despite the
DNA results from the crime lab, the conclusions reached were not

significant given the overwhelming evidence adduced at trial that Williams was in fact the perpetrator. Based on the foregoing, even if the DNA evidence had not been introduced at trial, Williams fails to show that a different outcome would have likely resulted. Accordingly, the ineffective assistance of trial counsel claim is meritless and the state appellate court's rejection of the underlying claim in the Rule 3.850 proceeding was clearly proper and should not be disturbed in this federal proceeding. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles v. Mirzayance, _____ U.S. ___, 129 S.Ct. 1411, 1420.

### C. Trial Court Error

Williams claims the trial court committed fundamental error when it (1) allowed photographs of the recovered stolen items to be admitted into evidence in violation of Fla. Stat. 90.91 (DE#1:28) (Claim 11); (2) allowed the Petitioner to be convicted of kidnaping although the elements of the offense had not been met (DE#1:31) (Claim 12); (3) allowed the jury to convict the petitioner of possession of a firearm by a convicted felon without calling any additional witnesses after the original trial concluded and the petitioner did not agree to stipulate to any previous testimony (DE#1:32)(Claim 14); (4) added the word "terrorizing" to the kidnaping jury instruction (DE#1:33) (Claim 15) and (5) added both "assault" and "battery" to the burglary offense (DE#1:35). (Claim 16).

The respondent correctly argues that **claims fourteen and sixteen** are unexhausted and subject to a prospective bar. However, for reasons different from the ones set forth by the respondent, **claims eleven, twelve, and fifteen** are barred from federal habeas

corpus review based upon an express procedural bar applied by the state courts.

It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Further, to provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin, 541 U.S. at 29-30; Duncan, 513 U.S. at 365-366. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Thus, an applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c).[11] In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of

_____

[11]The terms of 28 U.S.C. §2254(b) and (c) provide in pertinent part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>     (A) the applicant has exhausted the remedies available in the courts of     the State; or
>     (B)(i) there is absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>                   .     .     .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979). In Florida, claims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for post-conviction relief. <u>See</u> <u>Kelley v. State</u>, 486 So.2d 578, 585 (Fla.), <i>cert. denied</i>, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); <u>Loren v. State</u>, 601 So.2d 271, 272-73 (Fla. 1st DCA 1992).

The procedural history as set forth above indicates that Williams never presented **claims fourteen and sixteen**, as raised herein of this federal petition, before the state courts.

Ordinarily, a federal habeas corpus petition which contains unexhausted claims is dismissed pursuant to <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), allowing the petitioner to return to the state forum to present his unexhausted claim or claims. However, such a result in this instance would be futile. The petitioner's unexhausted claims are now incapable of exhaustion at the state level and would be procedurally barred under Florida law, because Williams cannot now file yet another Rule 3.850 motion in that it would be denied as successive. <u>See</u> <u>Fla.R.App.P</u>. 9.140(b)(3). Due to Williams' failure to raise **claims fourteen and sixteen** in a proper and timely Rule 3.850 motion, there is no longer a remedy available in state court as to these claims. <u>See</u> <u>Fla.R.Crim.P</u>. 3.850(b), (g).

As to **claims eleven, twelve, and fifteen**, these claims were raised in Williams' third Rule 3.850 motion filed March 31, 2008 and its accompanying amended motion filed the same date. (App.JJ). The trial court did not address the claim on the merits and expressly denied the motions as successive. (<u>Id.</u>). Williams

prosecuted an appeal from the trial court's order denying his motions as successive. (App.KK; <u>see also</u> App.LL; App.MM). The trial court rulings were affirmed in a <u>per curiam</u> decision without written opinion. (App.MM). Thus, while the claim may be deemed exhausted, it has been expressly procedurally barred in the state courts, <u>see</u> Fla.R.Cirm.P. 3.850(f); <u>Moore v. State</u>, 820 So.2d 199, 205 (Fla. 2002)(holding that second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion), warranting application of the bar here. <u>See Cone v. Bell</u>, 129 S.Ct. 1769, 1780 (2009)(when petitioner fails to first raise his federal claims in state court in compliance with relevant state procedural rules, federal habeas review is procedurally barred); <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)(same).

Williams is not entitled to review on the merits of **claims eleven, twelve and fifteen**, unless he can show both "cause" for the defaults and actual "prejudice" resulting from the defaults. <u>See Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977). "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. <u>Id.</u>; <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A federal court may review a procedurally defaulted claim, without a showing of cause or prejudice, only to correct a

fundamental miscarriage of justice. <u>Murray</u>, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. The actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases.[12] <u>See</u> <u>House v. Bell</u>, 547 U.S. 518, 538 (2006)(holding actual innocence requires substantive review only in extraordinary cases); <u>Dretke v. Haley</u>, 541 U.S. 386, 392-93, 124 S.Ct. 1847 (2004). <u>See also</u> <u>Bousley v. United States</u>, 523 U.S. 614 (1998), <u>quoting</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623. To meet this standard, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him of the underlying offense. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). Moreover, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>See</u> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001)(<u>citing</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998), <u>quoting</u> <u>Schlup</u>, 513 U.S. at 324)).

---

[12]The Supreme Court has reiterated the standard to be applied to claims of actual innocence. <u>See</u> <u>House v. Bell</u>, 547 U.S. 518, 537-38, 126 S.Ct. 2064, 2077 (2006)(<u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 319-322, 324 (1995)). The Supreme Court noted that while the "standard is demanding and permits review only in the 'extraordinary' case", the <u>Schlup</u> standard does not require absolute certainty about the petitioner's guilt or innocence." <u>Id.</u> (citations omitted). Accordingly, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>Id.</u> The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324.

As to **claim fifteen**, in an attempt to overcome the procedural bar, Williams asserts he should have been allowed to raise the fundamental error committed by the trial court when it added the word "terrorizing" to the kidnaping jury instructions in post-conviction proceedings because he was unable to do so on appeal since appellate counsel filed an Anders brief. (DE#22:38). Such an argument clearly does not justify Williams' failure to properly prosecute an appeal from the trial court's ruling in the third Rule 3.850 proceeding. Williams has failed to establish cause for the default as to **claim fifteen**. It, therefore, need not be determined whether he suffered actual prejudice. See Glover v. Cain, 128 F.3d 900, 904 n.5 (5th Cir. 1997). Williams does not present any argument to demonstrate cause or prejudice that would excuse his default as to **claims eleven and twelve**.

Williams has also not shown that the fundamental miscarriage of justice exception applies here. Accordingly, **claims eleven, twelve and fifteen** of the instant petition are procedurally barred from federal habeas corpus review. A discussion on the merits of the procedurally defaulted claims is, therefore, not appropriate. See O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999). See also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977).

### D. State Error

Williams claims the state committed fundamental error when it (1) accused a witness of lying during closing argument (DE#1:28) (Claim 13) and (2) failed to prove the elements of an aggravated

battery (Claim 19). (DE#1:53).

The respondent correctly argues that **claims thirteen and nineteen** are procedurally barred. However, for reasons different from the ones set forth by the respondent the foregoing claims are barred from federal habeas corpus review based upon an express procedural bar applied by the state courts.

**Claims thirteen and nineteen** were raised in Williams' third Rule 3.850 motion filed March 31, 2008 and its accompanying amended motion filed on April 28, 2008, respectively. (App.JJ). The trial court did not address the claim on the merits and expressly denied the motions as successive. (Id.). Williams prosecuted an appeal from the trial court's order denying his motions as successive. (App.KK; see also App.LL; App.MM). The trial court rulings were affirmed in a per curiam decision without written opinion. (App.MM). Thus, the claims are procedurally barred in this federal proceeding. See Fla.R.Cirm.P. 3.850(f); Moore, supra; see also Cone, supra; Coleman, supra.

Moreover, Williams does not present any argument to demonstrate cause or prejudice that would excuse his default as to **claims thirteen and nineteen**. Likewise, he has also not shown that the fundamental miscarriage of justice exception applies here. Accordingly, **claims thirteen and nineteen** of the instant petition are procedurally barred from federal habeas corpus review. A discussion on the merits of the procedurally defaulted claims is, therefore, not appropriate. See O'Sullivan, supra. See also Coleman at 750-51; Frady, supra; Wainwright, supra.

46

<u>E. Newly Discovered Evidence</u>

Williams claims newly discovered evidence exists to show that (1) the chain of custody of the evidence was broken (DE#1:37) (Claim 17) and (2) since the chain of custody had been broken, regarding the ski masks, the possibility exists that the masks may have been tampered with and the petitioner's DNA placed on the masks. (DE#1:49) (Claim 18).

**Claims seventeen and eighteen** were raised in Williams' amended Rule 3.850 motions filed on June 6, 2008 and July 18, 2008, respectively. (App.JJ).

Ultimately, the trial court expressly denied the motions as successive.[13] (<u>Id.</u>). Williams prosecuted an appeal from the trial court's order denying his motions as successive. (App.KK; <u>see also</u> App.LL; App.MM). The trial court rulings were affirmed in a <u>per curiam</u> decision without written opinion. (App.MM). Thus, **claims seventeen and eighteen** of this federal petition are procedurally barred.

Williams does not present any argument to demonstrate cause or prejudice that would excuse his default as to **claims seventeen and**

---

[13]The trial court's omnibus order reflects it conducted an analysis of **claims seventeen and eighteen** since Williams argued there existed some justification for his failure to raise the foregoing issues in his previous motions. Notwithstanding, the court dismissed the aforementioned claims without an evidentiary hearing because the suggested justification was insufficient since the facts set forth with respect to claims seventeen and eighteen as listed in this federal petition were known to Williams at the time of trial, at the time of his first post-conviction motion and was also something that could have or should have been addressed on direct appeal. This court agrees with the state trial court's determination.

**eighteen**. Likewise, he has also not shown that the fundamental miscarriage of justice exception applies here. Accordingly, **claims seventeen and eighteen** of the instant petition are procedurally barred from federal habeas corpus review. A discussion on the merits of the procedurally defaulted claims is, therefore, not appropriate. See O'Sullivan, supra. See also Coleman at 750-51; Frady, supra; Wainwright, supra.

<u>Evidentiary Hearing</u>

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir. 1989), quoting Slicker v. Wainwright, 809 F.2d 768, 770 (11th Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. Holmes, supra at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 26th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Donald A. Williams, pro se
     DC#426274
     Florida State Prison
     7819 NW 228th Street
     Raiford, FL 32026

     Michael C. Greenberg, AAG
     Office of the Attorney General
     444 Brickell Ave.
     Suite 650
     Miami, FL 33131

     Richard L. Polin, AAG
     Office of the Attorney General
     444 Brickell Ave.
     Suite 650
     Miami, FL 33131